# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIV. NO.: 1:08-cv-00036 |
| v. | ) | |
| | ) | ACTION FOR DEBT and |
| CLINTON GEORGE and | ) | FORECLOSURE OF REAL |
| JULIE GOERGE | ) | PROPERTY MORTGAGE |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR ORDER TO CANCEL MARSHAL'S SALE

Finch, Senior Judge

### I. Introduction

This matter comes before the Court on Defendants Clinton George and Julie George's Motion for Order to Cancel Marshal's Sale ("Motion"). In this foreclosure action, Plaintiff United States of America (the "Government") obtained a Default Judgment against Defendants and an Order of Sale directing the United States Marshal to sell the subject property at an auction, the proceeds of which would be used to satisfy Defendants' debt to the Government. Unbeknownst to the Court (but apparently beknownst to the parties), the property at issue, Plot No. 246 of Estate Glynn, Queens Quarter, St. Croix ("Plot No. 246"), was resurveyed and subdivided during the pendency of this lawsuit. The resurvey revealed that the property was actually twenty acres, instead of the fifteen assumed by the parties at the time the loan and mortgage were made in 1983. The resurvey also subdivided Plot No. 246 into four parcels. Neither party informed the Court of these important facts, and as a result, this Court granted

1

Default Judgment to the Government using the original and (now) inaccurate legal description of the property. The Court then granted the Government's Motion for Order of Sale again using the incorrect legal description and, unaware that Plot No. 246 had been subdivided, ordered that the property be sold as whole.

Defendants, having failed to defend in any meaningful way, now seek to amend the Default Judgment and Order for Sale to include the correct legal description. They also ask that the property be sold in parcels, instead of as a whole, in order to maximize the return on the property in the hopes that it will cover their obligations to the Government. The Government does not contest any of the facts offered by Defendants but objects to their Motion on the grounds that it is untimely.

## II. Factual and Procedural Background

On May 5, 2008, the Government filed a complaint against Defendants seeking foreclosure. The Government alleged that Defendants' had defaulted on a February 3, 1983 loan made to Defendants by the Farmers Service Agency ("FSA") of the United States Department of Agriculture and secured by a mortgage encumbering certain real property described as:

> Plot No. 246 of Estate Glynn, Kings Quarter, St. Croix, Virgin Islands, consisting of 15.9327, U.S. acres, more or less, as more fully shown on PWD Drawing No. 4083, dated February 5, 1982.

(*See* Compl. ¶¶ 4-7.)[1]  Defendants returned waivers of service on June 26, 2008, but otherwise failed to defend. (*See* Doc. 2.)

---

[1] The Government and Defendants entered into a second mortgage and promissory note on the same day. In its complaint, the Government sued for foreclosure on this second loan and mortgage as well. (Compl. ¶¶ 5-6.)

On October 7, 2008, this Court granted default judgment in favor of the Government. On July 1, 2009, on the Government's Motion, the Court issued an Amended Default Judgment to correct the description of the property to read:

> Plot No. 246, Estate Glynn, *Queen's Quarter*. St. Croix, USVI, consisting Of 15.9327. U.S. acres, more or less, as more fully shown and described on P.W.D. Drawing No. 4083 dated February 5, 1982.

(*See* June 19, 2009 Order, Doc. 14) (emphasis added to show change in description).[2]

On September 18, 2009, this Court granted the Government's Motion for Order of Sale and ordered that the property "be sold as a whole at public sale at the Office of the U.S. Marshal, Federal Building, St. Croix, U.S. Virgin Islands." (*See* September 18, 2009 Order at 2, Doc. 16.) The Court ordered that the Government provide notice of the sale including a description of the property consistent with the June 19, 2009 Order in local newspapers for four weeks prior to the Marshal's sale. (*Id.*) The Government did so and provided notice that the Marshal's sale was to be held on July 15, 2010. (*See* Notice of Sale, attached as Ex. 5 to Def.'s Motion, Doc. 20-5.)

On July 13, 2010, Defendants filed this Motion.[3] Defendants' Motion revealed that prior to and during the pendency of this lawsuit, Defendant and the FSA had discussed the possible sale of a portion of the encumbered property in order that Defendants might satisfy their outstanding obligation to the Government. In the course of these negotiations, the FSA coordinated a resurvey and subdivision of the property that resulted in the July 2, 2008 filing of a new official survey drawing of the property, identified as OLG Drawing No. D9-598-C008. (*See*

---

[2] In its motion to amend the default judgment, the government stated that the change was necessary "to avoid any confusion that may occur when attaching a Writ of Execution on the property and to insure that the correct parcel of real estate is being foreclosed." (*See* Motion to Amend Default Judgment 2, Doc. 13.) The Government did not mention, however, that the property's legal description had been changed as a result of a resurvey and subdivision.

[3] Defendants' Motion was verified and included a sworn verification by Defendant Julie George.

3

OLG Drawing, attached as Ex. 1 to Def.'s Mot, Doc. 20-1.) This survey revealed that Plot No. 246 consisted of a total of approximately 20.75 acres, not the 15.93 indicated in the former PWD Drawing and legal description of property contained in the 1983 Mortgage. The 2008 survey subdivided the property such that the legal description of Defendants' property in the new OLG Drawing was changed to reflect both the subdivision and the corrected acreage, as follows:

> Remainder Parcel No. 246, consisting of 5.5754 U.S. Acres, more or less; Parcel No. 246-U, consisting of 5.6900 U.S. Acres, more or less; Parcel No. 246-S, consisting of 8.9409 U.S. Acres, more or less; and Road Plot No. 246-T, consisting of 0.5362 U.S. Acre, more or less, all of Estate Glynn, Queens Quarter, as more fully shown in OLG Drawing No. D9-598-C008, dated July 2, 2008.

(*Id*.)

Defendants did not inform the Court of this resurvey until the filing of this Motion. Likewise, the Government did not inform the Court of the results of this resurvey, even though the FSA was largely responsible for conducting the resurvey.[4] Notably, the Government filed its Motion for Default Judgment on September 17, 2008, which was several months after the FSA had arranged for the resurvey and subdivision of Plot No. 246. (*See* Govt.'s Mot. for Default Judgment, Doc. 6.) Since receiving the Default Judgment in September 2008, the Government sought amendment of it twice and yet did not mention the resurvey or subdivision in either instance. (*See* Motions to Amend Default Judgment, Docs. 8 and 13.)

On July 14, 2010, this Court stayed the Marshal's sale scheduled for July 15, 2010, and ordered that the Government respond to Defendant's Motion. On July 21, 2010, this Court held a hearing on Defendants' Motion.

---

[4] Counsel for the Government indicated that she was not aware of the resurvey until Defendant filed this Motion.

## III. Discussion

### a. The Notice of Sale Does Not Accurately Describe the Property to be Sold

Both federal and local laws provide that, prior to the sale of property in aid of execution of a judgment, public notice of the sale must be made. *See* 28 U.S.C. § 2002 ("A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation . . . "); 5 V.I.C. § 484(a) ("Before the sale of property on execution, a written printed notice . . . particularly describing the property shall be . . . published in a newspaper . . .").[5]

"The object of a notice of sale is to inform the public of the nature and condition of the property to be sold, and of the time, place, and terms of the sale, in order to attract bidders and prevent a sacrifice of the property." *Lucerne Inv. Co. v. Estate Belvedere Inc.*, 7 V.I. 275, 281 (D.V.I. 1969). Notice should include a description of improvements – such as the existence of a residence on the property – and other details likely to contribute to competitive bidding. *See Stack's v. Gordon*, 17 V.I. 177, 185 (V.I. Terr. Ct. 1981) (Finch, J.,) (setting aside auction sale in part because "the notice failed to reveal was that there is a house on the property that was sold. The absence of any indication of improvements may well have been a cause of the absence of competitive bidding.").

---

[5] Under Fed. R. Civ. P. 69(a), "[t]he procedure of execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the where the court is located, but a federal statute governs to the extent it applies." Accordingly, the Court applies federal law to the extent that it applies and "fills in the gaps" with local law. *See Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995) ("Under Rule 69(a) of the Federal Rules of Civil Procedure, a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise.").

Furthermore, 5 V.I.C. § 485, which governs auctions of real property in aid of executing on a judgment, provides that "when the sale is of real property and consists of several known lots or parcels they shall be sold separately or otherwise, as is likely to bring the highest price."[6] *See also Banco Popular de P.R. v. Nisky Pharm., Inc.*, 2008 U.S. Dist. LEXIS 65099, at *2 (D.V.I. Aug. 18, 2008) (citing 5 V.I.C. § 485 and amending judgment so that properties in question were sold "separately" instead of "as a whole"). Taken together, sections 484 and 485 of title 5 of the Virgin Islands Code and 28 U.S.C. § 2002 require that the notice of sale provide an accurate description of the property, including whether it contains parcels or improvements. A notice of sale which fails to adhere to sections 484 and 485 can result in a void sale. *See* 5 V.I.C. § 489(2) (a court may decline to confirm sale when there are "substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting"); *Lucerne Inv. Co,* 7 V.I. at 281 (voiding sale under section 489 because three parcels at issue were sold as a whole when they should have been sold separately); *Stack's,* 17 V.I. at 185 (voiding sale under section 489 in part because "the description of the sale property omitted its most salient feature-the defendant's house.").

At the hearing, the Government did not dispute that Plot No. 246 had been resurveyed or subdivided. *See* 71 C.J.S. Pleading § 516 (2010) ("The verification of a pleading may authorize a finding of facts alleged therein where the adversary's pleading or proof is silent as to such

---

[6] The local law requirement that parcels be sold separately does not conflict with federal law regulating the judicial sale of foreclosed properties. The statute under which this Court ordered the sale of Plot No. 246, 28 U.S.C. § 2001, provides that "[a]ny realty or interest therein sold under any order or decree of any court of the United States shall be sold *as a whole or in separate parcels* . . . as the court directs." (emphasis added). Because section 2001 allows for the separate sale of parcels, there is no actual conflict between federal and local law. *See Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 975 F.2d 102, 111 (3d Cir. 1992) (finding that a conflict of law "occurs when the state regulation actually conflicts or is incompatible with federal law." (citing *Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153 (1982))).

facts."). The agency on behalf of which the Government brought the complaint, the FSA, was largely responsible for the resurvey and subdivision and the Government was thus constructively aware of those facts. *See* Restatement (Third) of Agency § 5.03, cmt. a ("[A] principal is charged with notice of facts that an agent knows or has reason to know"). The fact that Plot No. 246 is subdivided is "known" to the parties and the Court. Thus, section 485 requires that Plot No. 246 "be sold separately or otherwise, as is likely to bring the highest price." The Court finds that selling the parcels separately is likely to bring a higher price than if sold as a whole. *See Lucerne*, 7 V.I. at 281. The notice previously published by the Government used the old legal description of the property and does not indicate that the property is comprised of four parcels or that one of them contains a residence. (*See* Notice of Sale.) Accordingly, prior to auctioning the property, a new Notice of Sale must be published in a local newspaper. The notice must indicate that the property consists of four lots, the acreage of the four lots, and that one of the parcels is improved with a residence.

### b. The Default Judgment and Order of Sale Will Also Be Amended

The July 1, 2009 Amended Default Judgment and the September 18, 2009 Order of Sale contained the old legal description of the property. Having already found that the Notice of Sale was deficient for using this older and inaccurate legal description of the property, the Court will amend the Default Judgment and Order of Sale to include the legal description as contained in the OLG Drawing No. D9-598-C008, dated July 2, 2008.

The Court has jurisdiction to amend the Default Judgment and Order of Sale under Fed. R. Civ. Proc. (60)(a) which provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of

7

the record. The court may do so on motion or on its own, with or without notice." "Rule 60(a) is concerned primarily with mistakes which do not really attack the party's fundamental right to the judgment at the time it was entered. It permits the correction of irregularities which becloud but do not impugn it." *United States v. Stuart*, 392 F.2d 60, 62 (3d Cir. 1968). "The mistake correctable under the rule need not be committed by the clerk or the court; the rule may be utilized to correct mistakes by the parties as well." Wright, Miller & Kane, 11 Federal Practice & Procedure § 2854 (2010).

Here, the mistake at issue – the failure to use the correct legal description of the property in the Default Judgment and Order of Sale – does not affect the Government's right to the judgment or to execute on that judgment; rather, the mistake goes only to the legal description of the property that the Government is entitled to foreclose and may therefore be corrected under Rule 60(a).[7] *See United States v. Mosbrucker*, 340 F.3d 664, 666 (8th Cir. 2003) (granting government's motion to correct summary judgment order five years after judgment entered to correct error in legal description of foreclosed property because both parties knew or should have known of incorrect description and lack of prejudice to defendants); *In re Dalby,* 956 F.2d 268, 268 (6th Cir. 1992) (unpublished) ("The record shows that the amendment, merely substituting

---

[7] The Court finds that both Defendants and the Government share culpability in this mistake. Even though counsel for the Government indicated that she was unaware of the resurvey and subdivision, the Government was nonetheless constructively aware of those facts as the FSA had coordinated the resurvey and subdivision. Similarly, Defendants could have presented these facts to the Court prior to the granting of a default judgment. Furthermore, other than the minor inconvenience of renoticing the sale, the Government will not be prejudiced by amending the Default Judgment or Order of Sale. The correct legal description indicates that the property is 20 acres in total and consists of four separate parcels. The addition of these facts to the notice of sale is likely to increase the sale price of the property and thus the probability that the Government receive the full value of its judgment. Finally, amending the Default Judgment and Order of Sale is consistent with the Government's prior motions to amend the default judgment, in that amendment is necessary to "avoid any confusion" when executing on the property and to "insure that the correct parcel of real estate is being foreclosed." (*See* Motion to Amend Default Judgment 2, Doc. 13.)

the proper legal description of the property to be transferred to the bankruptcy estate, specifically 600 East Walton in Pontiac, Michigan, did not affect the substantive rights of the parties and could be viewed as a "clerical error" under Rule 60(a)."); see also *Banco Popular de P.R.,* 2008 U.S. Dist. LEXIS 65099, at *2 (holding that court had jurisdiction under Rule 60(a) to amend default judgment so that properties in question were sold "separately" instead of "as a whole"). And as Defendants are not asking to be "relieved" from the Default Judgment, the Court finds that Rule 60(b) and its concomitant time provisions do not apply to Defendants' Motion. *Compare* Fed R. Civ. Proc. 60(a) ("The Court may *correct* . . .") (emphasis added) and Fed. R. Civ. Proc. 60(b) ("[T]he court may *relieve* a party . . . from a final judgment . . .") (emphasis added); *see also JAMA Corp. v. Gupta*, 2007 WL 4343666, at *2 (M.D. Pa. 2007) ("Under Rule 60(a), there is no time limitation on such a motion.").

## IV.   Conclusion

For the foregoing reasons, the Court concludes that Default Judgment, Order of Sale, and Notice of Sale must be corrected to reflect the resurveyed description of the property. An Amended Default Judgment and Order of Sale reflecting the resurveyed description of the property accompany this Memorandum Opinion.

**ENTERED** this 26th day of July, 2010.

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE